Citation Nr: 1331559 
Decision Date: 09/30/13 Archive Date: 10/02/13

DOCKET NO. 07-11 232 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs (VA) Regional Office (RO) in 
Manila, the Republic of the Philippines


THE ISSUE

Entitlement to dependency and indemnity compensation (DIC), due to service connection for the cause of the Veteran's death. 


REPRESENTATION

Appellant represented by: The American Legion


WITNESSES AT HEARING ON APPEAL

The Appellant and her daughter


ATTORNEY FOR THE BOARD

Harold A. Beach, Counsel


INTRODUCTION

The Veteran served on active duty from December 1941 to March 1943, August 1944 to November 1944, September 1945 to March 1946, and April 1946 to March 1949. He was a prisoner of war (POW) of the Japanese Government from June 1942 to March 1943. The Veteran died in September 1999, and the appellant is his widow. 

This claim has been before the VA on several occasions, the last time in October 2010. The resulting VA actions were set forth in an October 2010 decision by the Board of Veterans' Appeals (Board) and will not be repeated here. 

In October 2010, the Board found that the appellant had submitted new and material evidence to reopen her claim of entitlement to DIC. The Board, then, remanded the claim to the RO for additional development. The Board directed the RO to take the following actions:

1. The RO was to inform the appellant of VA's duties to assist her in the development of her claim under 38 U.S.C.A. § 5103(a) and 38 C.F.R. § 3.159(b). The RO was to notify the appellant that she should submit any pertinent evidence in her possession, particularly as specified by the Court in Hupp v. Nicholson, 21 Vet. App. 342, 352-53 (2007). 

The notice was to further inform the appellant that the Veteran was not service-connected for any disabilities prior to his death, and was to include an explanation of the evidence and information needed to substantiate entitlement to DIC based on a condition not yet service connected. 

2. The Board also instructed the RO to provide the claims folder, including the available service records and post-service private medical records, to a VA examiner for review. The examiner was to provide an opinion as to whether it was at least as likely as not (a probability of 50 percent or greater) that any cardiovascular disease, myocardial ischemia, peptic ulcer, or malaria caused or contributed to the Veteran's death. If so, the examiner was to render an opinion as to whether it was at least as likely as not that any of those disorders was etiologically related to any incident of his active duty, including his POW status from June 1942 to March 1943. 

In addition, the examiner was to address whether the causes of death listed on the death certificate (sepsis, diabetes mellitus, and a carbuncle) were at least as likely as not etiologically related to the Veteran's period of active duty. 

Pursuant to the requested development, the Board received a July 2007 opinion from D. I. G. and an April 2013 opinion from a VA physician. 

In May 2013, following the requested development, the RO confirmed and continued the denial of entitlement to DIC due to service connection for the cause of the Veteran's death. 

In July 2008, during the course of the appeal, the appellant and her daughter testified at a hearing at the RO before the Veterans Law Judge whose signature appears at the end of this decision. 

After reviewing the record, the Board notes that there is a potential issue of entitlement to accrued benefits for the Veteran's heart disease, myocardial infarction, peptic ulcer disease, arthritis, beri beri, and helminthiasis. The appellant claims that those disorders are the result of the Veteran's experiences as a POW. 38 U.S.C.A. § 1112(b)(West 2002 and Supp. 2013); 38 C.F.R. § 3.309(c) (2013).Therefore, she maintains that service connection was warranted for those disorders during the Veteran's lifetime and that she is, therefore, entitled to accrued benefits. That claim has not been certified to the Board on appeal nor has it otherwise been developed for appellate purposes. Accordingly, the Board has no jurisdiction over that claim and it will not be considered below. 38 U.S.C.A. § 7104(a) (West 2002); 38 C.F.R. § 20.101 (2013). It is referred to the RO, however, for appropriate action.

Please note this appeal has been advanced on the Board's docket pursuant to 38 C.F.R. § 20.900(c) (2013). 38 U.S.C.A. § 7107(a)(2) (West 2002).


FINDINGS OF FACT

1. The Veteran died in September 1999 as a result of cardiopulmonary arrest secondary to sepsis and noninsulin-dependent diabetes mellitus; a carbuncle was noted to be a significant condition contributing to his death. 

2. At the time of the Veteran's death, service connection was not in effect for any disorder.

3. The fatal cardiopulmonary arrest, sepsis, and noninsulin-dependent diabetes mellitus, as well as the carbuncle, were first manifested many years after service, and the preponderance of the evidence is against a finding that any of those disorders is in any way related to service. 


CONCLUSION OF LAW

The criteria have not been met for entitlement to DIC due to service connection for the cause of the Veteran's death. 38 U.S.C.A. §§ 1310, 5103, 5103A (West 2002 and Supp. 2013); 38 C.F.R. § 3.159, 3.312 (2013). 


REASONS AND BASES FOR FINDINGS AND CONCLUSION

VA's Duty to Notify and Assist

Prior to consideration of the merits of the appeal, the Board must determine whether VA has met its statutory duty to assist the appellant in the development of her claim of entitlement to DIC due to service connection for the cause of the Veteran's death. 38 U.S.C.A. §§ 5103, 5103A; 38 C.F.R. § 3.159. After reviewing the record, the Board finds that VA has met that duty.

In January 2006, VA received the appellant's claim, and there is no issue as to providing an appropriate application form or completeness of the application. Following the receipt of that application, VA notified the appellant of the information and evidence necessary to substantiate and complete her claim, including the evidence to be provided by her and notice of the evidence VA would attempt to obtain. 

VA informed the appellant of the criteria for entitlement to DIC due to service connection for the cause of the Veteran's death. VA notified the appellant that at the time of his death, the Veteran had not been service-connected for any disability. The RO also informed the appellant of the evidence and information required to substantiate a cause of death claim based on a condition not yet service-connected. Hupp v. Nicholson, 21 Vet. App. 342 (2007). Statements from the appellant and her representative, such as the testimony rendered at the appellant's hearing in July 2008 and the joint motion of the parties, shows that the appellant and her representative had a good working knowledge of the criteria for entitlement to DIC benefits. Indeed, the appellant does not contend, and the evidence does not show, any deficits in the procedure to notify the appellant of the criteria for entitlement to DIC or to notify her of the information and evidence necessary to support her claim. 

In developing the record, VA obtained or ensured the presence of the Veteran's available service treatment and personnel records; records reflecting the Veteran's treatment by non-VA health care providers from August 1991 through the Veteran's death in September 1999; statements from the Veteran's former fellow POW's, dated in January 1992; a March 2001 statement from C. A. L., a longtime neighbor of the Veteran; a July 2007 opinion from D. I. G., a private physician; extracts from medical articles; the transcript of the appellant's hearing before the undersigned Veterans Law Judge; and an April 2013 opinion from a VA physician. 

The transcript of the Veteran's July 2008 hearing shows the presiding Veterans Law Judge conducted the proceeding in accordance with applicable VA regulations. The Veterans Law Judge identified the material issue, accepted additional evidence for association with the record, clarified the types of information and evidence relevant to the appellant's claim, enlisted the Veteran's representative's assistance in obtaining such information and evidence, clarified the information provided by the appellant and her witness, and, at the conclusion of the hearing, asked if the appellant or her witness had anything to add. As such, the conduct of the hearing was performed in accordance with the provisions of 38 C.F.R. § 3.103(c)(2). Therefore, there was no prejudice to the Veteran's claim as a result of the conduct of that hearing. See Bryant, 23 Vet. App. at 498 (citing to 38 U.S.C. § 7261(b)(2); Shinseki v. Sanders, 129 S. Ct. 1696, 1704 (2009)).

In sum, the appellant has been afforded a meaningful opportunity to participate in the development of her claim. She has not identified any outstanding evidence which could support her claim; and there is no evidence of any VA error in notifying or assisting the appellant that could result in prejudice to her or that could otherwise affect the essential fairness of the adjudication. Accordingly, the Board will proceed to the merits of the appeal.

The Merits of the Appeal

DIC may be awarded to a veteran's surviving spouse, children, or parents for death resulting from a service-connected or compensable disability. 38 U.S.C.A. § 1310 ; 38 C.F.R. § 3.312 . In order to establish service connection for the cause of a veteran's death, the evidence must show that a disability incurred in or aggravated by service was either the principal cause of death or a contributory cause of death. Therefore, service connection for the cause of a veteran's death may be demonstrated by showing that the Veteran's death was caused by a disability for which service connection had been established at the time of death or for which service connection should have been established. 38 U.S.C.A. § 1310; 38 C.F.R. § 3.312 . 

Service connection connotes many factors but basically it means that the facts, shown by evidence, establish that a particular injury or disease resulting in disability was incurred coincident with service in the Armed Forces, or if preexisting such service, was aggravated therein. 38 U.S.C.A. §§ 1110, 1131 (West 2002); 38 C.F.R. § 3.303(a) (2013). Generally, to support a claim of entitlement to service connection for the cause of the veteran's death, there must be competent evidence of the fatal disability; competent evidence of a disease or injury in service; and competent evidence of a nexus between the in-service injury or disease and the fatal disability. See Hickson v. West, 12 Vet. App. 247, 253 (1999). 

For certain disabilities, such as arteriosclerosis, cardiovascular-renal disease, arthritis, diabetes mellitus, and peptic ulcer disease, service connection may be presumed when such disability is shown to a degree of 10 percent or more within one year of the veteran's discharge from active duty. 38 U.S.C.A. § 1101, 1112; 38 C.F.R. §§ 3.307, 3.309. Such a presumption is rebuttable by affirmative evidence to the contrary. 38 U.S.C.A. § 1113; 38 C.F.R. § 3.307. 

When the Veteran is a former POW and dies before October 10, 2008, the following diseases shall be service connected if manifest to a degree of disability of 10 percent or more at any time after discharge or release from active military service even though there is no record of such disease during service: psychosis; any of the anxiety states; dysthymic disorder (or depressive neurosis); organic residuals of frostbite, if it is determined that the veteran was interned in climatic conditions consistent with the occurrence of frostbite; post-traumatic osteoarthritis; atherosclerotic heart disease or hypertensive vascular disease (including hypertensive heart disease) and their complications (including myocardial infarction, congestive heart failure, arrhythmia); stroke and its complications. 38 U.S.C.A. § 1112(b)(West 2002 and Supp. 2013); 38 C.F.R. § 3.309(c)(1) (2013).

When, as in this case, the Veteran was interned or detained for not less than 30 days prior to September 28, 2009, the following diseases shall be service connected if manifest to a degree of 10 percent or more at any time after discharge or release from active military, naval, or air service even though there is no record of such disease during service: avitaminosis; beriberi (including beriberi heart disease); chronic dysentery; helminthiasis; malnutrition (including optic atrophy associated with malnutrition); pellagra; any other nutritional deficiency; irritable bowel syndrome; peptic ulcer disease; peripheral neuropathy, except where directly related to infectious causes; cirrhosis of the liver. 38 U.S.C.A. § 1112(b)(West 2002 and Supp. 2013); 38 C.F.R. § 3.309(c)(2) (2013).

During her July 2008 hearing before the undersigned Veterans Law Judge, the appellant and her witness testified that from a time shortly after service, the Veteran was complaining of heart problems and joint and muscle pains associated with heart disease and arthritis. They also noted that the Veteran had had a peptic ulcer. They reported that those disorders were due, primarily, to his treatment as a POW during World War II. They maintained that those disorders contributed to his death and that service connection was, therefore, warranted for the cause of his death. However, after carefully considering the claim in light of the record and the applicable law, the Board is of the opinion that the preponderance of the evidence is against that claim. Accordingly, the appeal will be denied. 

The appellant is competent to give testimony about her observations of the Veteran in and after service. For example, she is competent to report that the Veteran complained of muscle and joint pain or that he was weak and had a poor appetite. See, e.g., Layno v. Brown, 6 Vet. App. 465 (1994). In certain instances, lay evidence can be competent and sufficient to establish a diagnosis of a condition. King v. Shinseki, 700 F.3d 1339, 1345 (Fed. Cir. 2012) (the Federal Circuit Court discussing 38 U.S.C.A. § 5107(b), 38 C.F.R. § 3.307(b), and its prior holdings in Buchanan v. Nicholson, 451 F.3d 1331, 1335 (Fed. Cir. 2006); Jandreau v. Nicholson, 492 F.3d 1372, 1376 (Fed. Cir. 2007); and Davidson v. Shinseki, 581 F.3d 1313, 1316 (Fed. Cir. 2009)). Such cases may occur under the following circumstances: (1) when a layperson is competent to identify the medical condition, (2) when a layperson is reporting a contemporaneous medical diagnosis, or (3) when a lay person describes symptoms which are subsequently diagnosed by a medical professional. See Jandreau, supra. 
Competency must be distinguished from weight and credibility, which are factual determinations going to the probative value of the evidence. See Rucker v. Brown, 10 Vet. App. 67 (1997). In weighing credibility, VA may consider interest, bias, inconsistent statements, bad character, internal inconsistency, facial plausibility, self interest, consistency with other evidence of record, malingering, desire for monetary gain, and demeanor of the witness. Caluza v. Brown, 7 Vet. App. 498 (1995). The Board may weigh the absence of contemporaneous medical evidence against the lay evidence in determining credibility, but the Board cannot determine that lay evidence lacks credibility merely because it is unaccompanied by contemporaneous medical evidence. Buchanan, supra. 

In deciding this appeal, the Board must weigh the evidence and decide where to give credit and where to withhold the same and, in so doing, accept certain medical opinions over others. Schoolman v. West, 12 Vet. App. 307 (1999); Evans v. West, 12 Vet. App. 22 (1998). The probative value of a medical opinion is generally based on the scope of the examination or review, as well as the relative merits of the expert's qualifications and analytical findings. The probative weight of a medical opinion may be reduced if the examiner fails to explain the basis for an opinion. Sklar v. Brown, 5 Vet. App. 140 (1993). In this regard, contemporaneous evidence has greater probative weight than a history reported by the Veteran. Curry v. Brown, 7 Vet. App. 59 (1994). However, medical evidence that is speculative, general or inconclusive in nature cannot support a claim. See Obert v. Brown, 5 Vet. App. 30 (1993).

The Veteran's death certificate shows that he died in September 1999, as a result of cardiopulmonary arrest secondary to sepsis and noninsulin-dependent diabetes mellitus. A carbuncle was noted to be a significant condition contributing to his death. His service personnel records also show that he was a POW of the Japanese Government from June 1942 to March 1943. 

The Veteran's service treatment records, and the reports of examinations, performed in November 1945 and March 1946 are negative for any complaints or clinical findings of the fatal cardiopulmonary arrest secondary to sepsis and noninsulin-dependent diabetes mellitus or of a carbuncle. On the report of the March 1946 examination, it was noted that the Veteran had had malaria in December 1942 which had been incurred in military service. 

In February 1992, a former fellow POW reported that after the Veteran attempted to escape from the POW camp, he was beaten and sustained a fractured rib, headaches, and dizziness. 

In July 2007, D. I. G., a private physician, reported that in 1995, the Veteran had been treated for osteoarthritis, ischemic heart disease (myocardial infarction), and a bleeding peptic ulcer. Dr. G. suggested that the physical and emotional toll sustained by the Veteran during World War II resulted in him contracting those disorders. Therefore, in April 2013, the Veteran's case was reviewed by a VA physician to determine whether it was a nexus between the Veteran's fatal disorders and service. 

Following her review, the VA physician opined that it was less likely than not that any cardiovascular disease, myocardial ischemia, peptic ulcer disease, or malaria caused or contributed to the Veteran's death. In explaining her reasoning, she cited the Veteran's final hospital report which showed that on the day before his death, he had been admitted for an abscess which culminated in the fatal sepsis. The VA physician further stated that it was less likely than not that such an abscess was related to any incident associated with his POW status. In this regard, she noted that the history on the hospital report showed that it had been present for 10 days and that there was no available information, narrative or medical, that supported the presence of a similar carbuncle during the Veteran's service. 

In evaluating the foregoing opinions, the Board notes that the VA examiner not only reviewed the entire record, she gave a more complete explanation for reaching her decision. As such, her opinion is more full and complete than that from Dr. G. In addition, Dr. G. stated that it was only a "possibility" that the Veteran's cardiovascular disorder had been initially manifested in service. That opinion is, effectively, speculative, general or inconclusive in nature. See Obert. Consequently, the Board finds that the VA examiner's opinion has greater probative value than that of Dr. G. 

The appellant has submitted several extracts from medical articles showing the effects of diabetes mellitus, sepsis, peptic ulcer disease, and malaria on the human body. However, those article do not mention the Veteran's case, specifically, or otherwise suggest how those disorders actually affected the Veteran. Without more, they are not probative of the Veteran's appeal

The only other evidence supporting the appellant's claim is the testimony from she and her daughter and the appellant's own correspondence. Although she contends that the diseases the Veteran sustained after service, such as peptic ulcer disease, heart disease, or arthritis, contributed to his death, such information is, generally, outside the realm of common knowledge of a lay person. See Jandreau, supra, at 1377 n.4 (lay persons not competent to diagnose cancer). Therefore, her unsupported lay opinion lacks probative value. 

Inasmuch as the preponderance of the competent evidence of record shows that the Veteran's death is unrelated to a service-connected disability, the appellant does not meet the criteria for service connection for the cause of death. Accordingly, service connection for the cause of his death is not warranted, and the appeal is denied. 

In arriving at this decision, the Board has considered the doctrine of reasonable doubt. However, that doctrine is only invoked where there is an approximate balance of evidence which neither proves nor disproves the claim. In this case, the preponderance of the evidence is against the appellant's claim of entitlement to service connection for the cause of the Veteran's death. Therefore, the doctrine of reasonable doubt is not applicable. 38 U.S.C.A. § 5107(b) (West 2002); 38 C.F.R. § 3.102 (2013). 


ORDER

Entitlement to DIC due to service connection for the cause of the Veteran's death is denied. 



____________________________________________
D. C. SPICKLER
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs